Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Defendant PCH North
Phoenix I, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FERNANDO GASTELUM, | No. 2:17-cv-03627-DJH |
| Plaintiff, | |
| vs. | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR FEES, COSTS AND EXPENSES** |
| PCH NORTH PHOENIX I, LLC, | |
| Defendant. | |

Defendant PCH North Phoenix I, LLC d/b/a Hilton Garden Inn Pride ("PCH" or "Defendant"), through counsel, respectfully responds in opposition to Plaintiff's Application for Fees, Costs and Expenses ("Application"), filed on February 12, 2018 [Doc. # 23], as follows:

## I.    INTRODUCTION

This Court has been asked to determine the amount of "reasonable attorney's fees", if any, Mr. Strojnik should be awarded for drafting a copy-and-paste complaint in which the Plaintiff only prevailed on one of his five causes of action.[1]

The Court is well aware of Mr. Strojnik and his history of ADA litigation in Arizona since 2015.[2] Arizona District Court Judge Neil Wake referred to

---

[1] Furthermore, of the twenty-one (21) ADA violations listed by Plaintiff in his Complaint, Defendant's ADA accessibility expert found that only six (6) were valid.

[2] The revisionist history described in the fee application regarding Mr. Strojnik's ADA litigation in Maricopa County is demonstrably false. Put simply, he served as lead counsel in more than 1200 ADA cases that were consolidated and collectively

Mr. Strojnik's litigation tactics on behalf of Advocates for Individuals with Disabilities Foundation—i.e., filing a copy-and-paste complaint and then demanding $5,000 in attorneys' fees to settle the case—as "unethical extortion".[3]

In Mr. Gastelum's ADA litigation against local hotels (90+ lawsuits filed since July 29, 2017) Mr. Strojnik's *initial* settlement demand for attorney's fees, costs and expenses routinely exceeds $20,000.00.

As more fully discussed below, the Court has ample justification to outright deny the Plaintiff's fee application because the fee agreement between Mr. Strojnik and the Plaintiff is void as a matter of public policy.  In a deposition taken by undersigned counsel in November 2017, Plaintiff admitted that he receives a $350.00 flat rate for any ADA case that settles (or when money is collected from the Defendant).  At the time of the deposition Plaintiff had settled five (5) cases. The Plaintiff admitted that he did not know the amount that the cases had settled for—only that he received his $350.00 in a sealed envelope from Mr. Strojnik once the money was collected.  The language of the fee agreement between Plaintiff and Mr. Strojnik purportedly gives Mr. Strojnik "unfettered discretion in all settlement matters provided, however, that Client's consent shall be required when the settlement amount is less than $350.00 payable to Client."  At least one of those settlement agreements has been entered into evidence in another matter.  The case settled for $18,750.00.[4]  This means Plaintiff collected less than 2% of the settlement amount with the remaining 98% presumably going to Mr. Strojnik.

To put Mr. Strojnik's request for more than $15,839.00 in fees, costs and

dismissed for lack of standing. Mr. Strojnik and his client, Advocates for Individuals with Disabilities Foundation, agreed to pay $25,000 in sanctions and agreed not to appeal the trial court's dismissal.

[3] *See* Judge Wake's opinion attached as Exhibit A.

[4] *See* settlement agreement attached as Exhibit B.

2

5965039v1(67156.1)

expenses in perspective, if he averages $13,000 in fees in each of the 90 identical ADA cases he has filed since August 2017 he will have generated $1,170,000 in fees for legal work done over the course of six (6) months.  Even if the Court permitted Mr. Strojnik to bill at $650/hour (which it should not) this would mean that he billed 1800 hours in six months (or 300 hours per month).  In other words, Mr. Strojnik is claiming to bill ten hours per day, seven days a week for six months straight. Mr. Strojnik's fee application in this case should not be viewed in a vacuum, but rather as part of a broader narrative.

As more fully discussed below, Defendant urges the Court to use its discretion to outright deny Mr. Strojnik's application, or at the very least to reduce his fees to a "reasonable" amount that does not shock the conscience and offend the notions of fairness and equity.

**II.    FACTUAL BACKGROUND**

Defendant is a franchisee that operates a Hilton Garden Inn located in north Phoenix. Plaintiff is a resident of Casa Grande, Arizona who had not stayed in a Phoenix-area hotel for several years prior to being introduced to Mr. Strojnik. Currently, he has sued more than 95 Phoenix-area hotels since July 29, 2017 claiming that he planned to stay overnight in each one of them.  The Complaint in this matter was filed on October 10, 2017—the 46th ADA complaint filed by Plaintiff in a ten week stretch.  All the Complaints are virtually identical—only a handful of paragraphs within the twenty page complaint contain allegations unique to the Defendant.

Plaintiff's Complaint contained five claims: (1) ADA, (2) Negligence, (3) Negligent Misrepresentation, (4) Failure to Disclose, and (5) Consumer Fraud/Common Law Fraud. Plaintiff is only entitled to his reasonable fees for the ADA claim—there is no recovery of fees for work spent on the remaining state law

3

tort claims.[5]

Immediately after being served with the Complaint, Defendant retained Paul Farber, a local certified accessibility expert, to evaluate the alleged violations. Mr. Farber determined that of the twenty-one (21) ADA violations identified by Plaintiff in his Verified Complaint, only six (6) were valid.[6] The other fifteen allegations were baseless. Furthermore, all of the six valid allegations were minor and hyper-technical. For example, while Defendant has the proper number of accessible parking spaces in its parking lot, Plaintiff alleged those accessible spaces were not properly disbursed throughout the parking lot.

Plaintiff's Complaint also alleges that Defendant's website was in violation of 28 C.F.R. § 36.302(e). That regulation provides that a hotel must (1) identify the hotel's accessible features on its website in enough detail to reasonably permit a guest with disabilities to determine whether the property meets his/her accessibility needs, and (2) allow accessible rooms to be reserved online. Whether a claim under 36.302(e) can even be brought against a hotel franchisee who does not own or control its website—Defendant's website and online reservation system is owned and controlled by Hilton Worldwide—is doubtful.  Regardless, Defendant's website was compliant with 36.302(e): it allowed for the reservation of accessible guest rooms and it contained a comprehensive list of accessible features at the property.[7] Furthermore, Defendant's Offer of Judgment does not require Defendant to make any changes to its website. Defendant is only required to communicate that list of accessible features to the third party booking sites like www.expedia.com.

Whether the minor ADA violations at the property actually deterred the

---

[5] Not that it matters. Plaintiff did not prevail on his tort claims.

[6] *See* Mr. Farber's report attached as Exhibit C.

[7] *See* Plaintiff's Complaint at Paragraph 31, in which it identifies 28 key accessible features of the property.

4

Plaintiff from making a reservation at Defendant's hotel sufficient to confer Article III standing is dubious at best—regardless, the expense of litigating that issue did not make economic sense for Defendant.

A.     Procedural History of the Case.

Plaintiff filed his copy-and-paste Complaint on October 10, 2017. Defendant immediately hired Mr. Farber to verify whether the alleged ADA violations were valid. After determining that six of the twenty-one allegations were valid, Defendant filed its Answer *admitting* that the property was not fully compliant with the ADA. The parties exchanged MIDP responses—Plaintiff's was virtually identical to the dozens he had completed in his other cases—and then Defendant filed its Offer of Judgment on January 29, 2018, which was accepted by Plaintiff the next day. That is the total amount of legal work performed by Mr. Strojnik in this case: a copy-and-paste Complaint and a copy-and-paste MIDP response.

## II.    LEGAL ARGUMENT

### A. **The Court has the discretion to (and should) outright deny Plaintiff's fee application.**

A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee "*unless special circumstances would render such an award unjust.*" <u>Barrios v. Cal. Interscholastic Fed'n</u>, 277 F.3d 1128, 1134 (9th Cir. 2002) (Emphasis added).

The Arizona District Court has already held that Mr. Strojnik's extortionist litigation tactics warrant an outright denial of attorney's fees.  On September 1, 2017, Judge Neil Wake of the District Court of Arizona issued an eleven page ruling against another serial ADA litigant represented by Mr. Strojnik, which culminated with the following conclusion:

> In this case, the complaint demanded a minimum of $5,000 in attorney's fees. In a simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000. Moreover, the federal disability statute allows the award of

5

only "a reasonable attorney's fee," not any fee the attorney may demand. **No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA.**

*Advocates for Individuals with Disabilities LLC v. MidFirst Bank*, 2017 WL 3872419 at *6 (D. Ariz. September 5, 2017).  *See* Exhibit A.[8]

Judge Wake's opinion rejecting attorneys' fees for serial ADA plaintiffs is entirely consistent with United States Supreme Court precedent.  In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835 (2001), the Supreme Court found that one of the purposes in giving a trial court discretion to outright deny an award of attorneys' fees to a prevailing plaintiff in an ADA case is to discourage "extortionist" behavior.  *Id.* at 618, 640 ("And Congress assigned responsibility for awarding fees not to automatons unable to recognize extortionists, but to judges expected and instructed to exercise 'discretion'").  Judge Wake's opinion lamented that serial ADA plaintiffs' "extortionist practices" had become "pervasive" in Arizona.

By the time Judge Wake had issued his rejection of Mr. Strojnik's "unethical" and "extortionate" demands for $5,000, Mr. Strojnik and Mr. Gastelum had already filed more than two dozen of these ADA "online reservation" lawsuits demanding tens of thousands in fees following service of the complaints.  This litigation tactic is precisely why the ADA granted (and the U.S. Supreme Court emphasized the importance of) trial courts' discretion to rein in the extortionate behavior of plaintiff's attorneys collecting millions in attorneys' fees under the guise of civil rights litigation.

The Court may also deny the Plaintiff's fee application because the underlying

---

[8] While the ruling in *Advocates for Individuals with Disabilities LLC v. MidFirst Bank* is not binding, it certainly is persuasive. *Gustafson v. Goodman Manufacturing Company LP,* 2016 WL 1029333 at *3 (D. Ariz. March 14, 2016).

fee agreement between Plaintiff and Mr. Strojnik violates Ethical Rule 1.2. Furthermore, Ariz. Op. 94-02 explains that a "client may not be asked to agree to representation so limited in scope that the client surrenders the right to settle his or her own matter."

When a fee agreement in Arizona violates public policy by failing to comply with the Rules of Professional Conduct, the attorney is not entitled to any fee. _Peterson v. Anderson_, 155 Ariz. 108, 745 P.2d 166 (App. 1987). Accordingly, Mr. Strojnik is not permitted to recover a fee in this matter.

> **B.** **In the event the Court opts to award fees to Plaintiff, it should find that Mr. Strojnik's 20 hours expended and $650 hourly rate for a copy-and-paste Complaint are not justified under the _Kerr_ factors.**

The ADA states that the court "in its discretion, may allow the prevailing party…a reasonable attorney's fee, including litigation expenses, and costs…" 42 U.S.C. § 12205. The most useful starting point for determining the amount of a reasonable fee is the number of hours _reasonably_ expended on the litigation multiplied by a _reasonable_ hourly rate. _Hensley v. Eckerhart_, 461 U.S. 424, 437 (1983) (Emphasis added). Trial courts are not accountants, though, and "may take into _account their overall sense of a suit_, and may use estimates in calculating and allocating an attorney's time." _Fox v. Vice,_ 131 S.Ct. 2205, 2216 (2011) (Emphasis added).

Utilization of the _Kerr_ factors, therefore, "provides a measuring stick whereby an appeals court can evaluate whether the district court acted within its broad discretion to enhance or reduce a fee award based on the facts of a particular case." _Holhbein v. Utah Land Resources, LLC,_ 2015 WL 1413503 at *4 (D. Nevada, March 27, 2015).

The _Kerr_ factors include:

(1) the time and labor required, (2) the novelty and difficulty of the questions

7

1    involved, (3) the skill requisite to perform the legal service properly, (4) the

2    preclusion of other employment by the attorney due to acceptance of the case, (5) the

3    customary fee, (6) whether the fee is fixed or contingent, (7) time limitations

4    imposed by the client or the circumstances, (8) the amount involved and the results

5    obtained, (9) the experience, reputation, and ability of the attorneys, (10) the

6    'undesirability' of the case, (11) the nature and length of the professional relationship

7    with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*

8    526 F.2d 67, 70 (9th Cir. 1975).

9          The Ninth Circuit has also recognized that an initial "haircut" of 10% is

10   warranted when the defendant makes a good faith effort to comply with the ADA once

11   they received notice of the specific violations.  *Gonzales v. City of Maywood,* 729 F.3d

12   1196, 1203 (9th Cir. 2013).  This percentage reduction is based on an exercise of the

13   Court's discretion and may be made "without a more specific explanation." *Id.* (citing

14   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

15                     **Time and Labor Expended**

16         As expressed by Judge Wake, it is "impossible" that the fees incurred for

17   preparing a simple form copy-and-paste Complaint could amount to $5,000, let alone

18   the $6,461 that Mr. Strojnik claims he incurred in preparing and filing this particular

19   complaint (again, the 46th complaint he filed in two months alleging the exact same

20   causes of action).  The only other "substantive" legal work performed on Plaintiff's

21   behalf was his MIDP response. This was served with the Summons and Complaint

22   and, like the Complaint, was copied and pasted from the dozens he had previously

23   done.

24         Furthermore, the Court must consider that a substantial portion of

25   Mr. Strojnik's time was spent on the state tort claims Plaintiff alleged: Negligence,

26   Negligent Misrepresentation, Failure to Disclose, Consumer Fraud and Common

27   Law Fraud.  The Plaintiff did not prevail on those claims nor is Mr. Strojnik entitled

28                                          8

to collect fees for time spent working on those claims (which comprised 80% of the claims brought).

i.    Lack of Pre-Litigation Notice

Lack of pre-litigation notice is one of the main factors the Court may consider when determining whether to *reduce* the amount of attorney's fees it awards to the "prevailing plaintiff." *Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008) (Emphasis added).

> A district court may, in its protraction analysis, consider whether a plaintiff provided pre-litigation notice. Pre-litigation notice is not required, and failing to provide notice is not unjust, but district courts have discretion to consider all kinds of non-required conduct in deciding whether litigants have protracted litigation.
>
> While a district court may not reduce fees on the premise that the suit should not have been filed at all before providing notice, it does have discretion to determine whether failing to provide pre-litigation notice resulted in unnecessary fees during the course of the litigation—that is, fees that would have been lower had there been notice before filing.

*Jankey,* 537 F.3d at 1132.

Defendant's principal, Richard Fisher, has stated that he would have immediately undertaken remedial efforts had he received a pre-litigation notice from the Plaintiff. *See* Exhibit D. While pre-litigation notice is not specifically required by the ADA, pre-litigation notice is generally customary in civil rights disputes (and generally, all business disputes).   Why Plaintiff chose not to provide notice to Defendant prior to filing suit is not a mystery.   The answer is money—Plaintiff would not have received his $350.00 flat rate and Mr. Strojnik would not have been able to claim more than ten thousand in fees had they provided pre-litigation notice.

**Novelty and Difficulty of the Issues Involved**

This case is routine for Mr. Strojnik—it was the 46th ADA complaint filed by the Plaintiff between July 29, 2017 and October 10, 2017. The issues are

9

straightforward.   Pursuant to 28 CFR § 36.302(e), a hotel's website must allow individuals with disabilities to (1) reserve accessible guest rooms online and (2) to identify the accessible features of the property in enough detail so that an individual with disabilities can determine whether the property meets his or her accessibility needs.   It literally takes undersigned counsel three minutes to determine whether a hotel's website complies with 28 CFR 36.302(e). The other ADA violations alleged in the Complaint are minor and technical. So technical, apparently, that Mr. Strojnik—who claims specialized knowledge worthy of a $650 hourly rate in ADA matters—only correctly identified six valid ADA violations (despite alleging more than 20).

The straightforwardness of this case weighs against a high fee rate and a high fee award. *See* *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (holding that the district court "may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as a justification for a reduction in the overall rate").   Mr. Strojnik's hourly rate of $650.00 is unreasonable on its face.[9]   It is especially unreasonable in light of the simplistic legal and procedural issues involved in this matter.

Furthermore, the 104.80 hours that Mr. Strojnik claims he devoted to "pre-filing due diligence" in July 2017 were completely unreasonable. Mr. Strojnik claims the 104.80 hours were devoted to "issues relating to 28 CFR 36.302(e) and, particularly, the questions relating to the State Law Claims [which] are novel in this District and required extensive common pre-litigation due diligence." He also states that time was spent in the "preparation of a proprietary guide book for use by Plaintiff, Plaintiff's

---

[9] According to the *State Bar of Arizona 2016 Economics of Law Practice in Arizona* survey of hourly rates charged by Arizona lawyers, the median hourly rate in Arizona for a plaintiff litigation attorney with 30 – 39 years of experience is $299 and for a plaintiff personal injury attorney is $312. *See* Exhibit E. Mr. Strojnik's claimed rate is more than double the average rates charged by Arizona plaintiff's lawyers with similar years of experience.

10

investigators, third party vendors and Counsel." First, Mr. Strojnik should not be compensated for time spent researching state law tort claims—those claims do not permit the recovery of fees. Second, Plaintiff did not prevail on the state law tort claims. Third, the time spent preparing the proprietary guidebook evidently did not produce the benefits it was intended for. While Plaintiff alleged to have encountered 21 ADA violations at the property—and alleged he was deterred from staying at the property because of them—only 6 of those 21 ADA violations turned out to be valid. Fourth, Mr. Strojnik's 104.80 hours of "pre-filing due diligence" (which was allegedly performed in July 2017) should not be apportioned to this case, the 46th ADA case he filed since conducting that pre-filing due diligence.  Those 104.80 hours should have been billed to the first lawsuit he filed, *Gastelum v. MCPHX17, LLC,* 2:17-cv-02536-DGC, and not to this case (or any subsequent case) in a pro-rata fashion.

## The skill requisite to perform the legal service properly.

A legal assistant or paralegal could have performed the vast majority of work in this case.  As Mr. Strojnik concedes, the Complaint is virtually identical to the 45 he had previously filed.  Because Plaintiff accepted Defendant's Offer of Judgment so soon after Defendant filed its Answer, the parties did not need to exchange disclosure statements, draft a Joint Case Management Report, attend a Rule 16 Conference, serve discovery requests or responses or perform any other substantive legal work.  Even if Mr. Strojnik was considered by the Court to be a highly experienced ADA attorney—despite having lost more than 1200 ADA cases in one day and only correctly identifying 6/21 ADA violations at the property—none of that experience was needed to prosecute or resolve this lawsuit.

## The preclusion of other employment by Mr. Strojnik due to acceptance of the case and his customary fee.

Mr. Strojnik concedes that representing Mr. Gastelum takes up approximately 90% of his time—together they average approximately 20 new case filings a month.

11

1  As noted above, the math on that is virtually unbelievable as Mr. Strojnik's fee

2  application (if multiplied by the 90 cases he's filed with Mr. Gastelum) would

3  indicate Mr. Strojnik is already working more than 300 hours a month.  Furthermore,

4  Mr. Strojnik does not indicate that any of his other (non pro-bono) clients currently

5  or in the past have ever retained his services at a rate of $650 per hour.  This factor

6  cuts in favor of reducing his fee amount.

7  **Whether fee is fixed or contingent.**

8  Pursuant to the fee agreement between Mr. Gastelum and Mr. Strojnik,

9  Mr. Gastelum will never be personally liable to pay Mr. Strojnik's fees, even if

10  Mr. Gastelum does not prevail in the matter.  The fee agreement states that in the

11  event "a particular Claim does not result in a settlement or an award of costs,

12  expenses and fees, then Attorney shall be entitled to recover his costs and expenses

13  from the proceeds of another Claim or waive the costs and expenses at his

14  discretion."  This factor cuts in favor of reducing Mr. Strojnik's claim for $12,961.00

15  in fees.

16  **The amount involved and the results obtained.**

17  Defendant concedes that Plaintiff should be considered a "prevailing plaintiff"

18  in this matter. Defendant has agreed to remedy a couple of the minor ADA violations

19  on the property and communicate the accessible features on its website to third party

20  reservationists.  It is important to remember, however, that Plaintiff only prevailed on

21  one of the five claims he alleged in his Complaint and *incorrectly* identified fifteen

22  ADA violations on the property. The remaining state law tort claims did not generate

23  any damages for Plaintiff. This factor cuts in favor of reducing Mr. Strojnik's claim for

24  $12,961.00 in fees.

25  **The experience, reputation, and ability of the attorneys.**

26  While Mr. Strojnik has been practicing commercial litigation for more than 35

27  years, he has only been litigating ADA matters since 2015.  As to his reputation, he is

28  12

widely considered to be the most controversial attorney currently practicing in Arizona.  A google search of his name will reveal numerous articles, news reports, judicial opinions disapproving of his ADA litigation efforts.  While he has served as lead counsel in more than 2000 ADA cases the vast majority were consolidated and dismissed by Maricopa Superior Court Judge David Talamante.  In addition, it does not appear that he has ever taken an ADA case to trial or even extensively litigated one.  This factor cuts in favor of reducing his fee amount.

### The 'undesirability' of the case.

As Mr. Strojnik concedes, these lawsuits are not popular in Arizona among the business or disability community.  This is not because the business community opposes the ADA, the current climate is such solely due to Mr. Strojnik's serial ADA litigation—more than 2000 "drive by" ADA lawsuits filed against Arizona businesses and commercial landlords since June 2015.  Because Mr. Strojnik single-handedly created the "undesirability" of litigating an ADA case in Arizona, this factor cuts in favor of reducing his fee amount.

### Awards in similar cases.

Undersigned counsel recently litigated a fee application filed by Peter K. Strojnik, Jr. (the son of Plaintiff's counsel) in an ADA "pool lift" lawsuit.  Judge Holland reduced Mr. Strojnik Jr.'s hourly rate from $650 to $350 and awarded him $3,600 in attorney's fees and $460 in costs.  A copy of Judge Holland's opinion is attached hereto as Exhibit F.

## III.   CONCLUSION

The Court has broad discretion to deny, or significantly reduce Plaintiff's fee application.  A request for more than $15,839.00 in fees, costs and expenses for a case that includes a copy-and-paste Complaint and MIDP and *no other substantive legal work* is simply unreasonable.  Mr. Strojnik's hourly rate of $650 is unreasonable.  So too is his claim to have spent 20 hours litigating this matter.  Accordingly, the

13

1  Defendant requests the Court outright deny (or significantly reduce) the Plaintiff's fee

2  application.

3          RESPECTFULLY SUBMITTED this 5th day of March, 2018.

4                                          **JENNINGS, STROUSS & SALMON, P.L.C.**

5

6                              By: s/  Lindsay G. Leavitt
                                     Lindsay G. Leavitt
7                                    One East Washington Street, Suite 1900
                                     Phoenix, AZ  85004-2554
8                                    *Attorneys for Defendant Pride Hospitality, Inc.*

9

10

11

12                              **CERTIFICATE OF SERVICE**

13  ☒     I hereby certify that on March 5, 2018, I electronically transmitted the
          attached document to the Clerk's Office using the CM/ECF System for filing
14        and transmittal of a Notice of Electronic Filing to the following CM/ECF
          registrants:
15                              Peter Strojnik
                                ADA@strojnik.com
16                              STROJNIK, P.C.
                        2375 East Camelback Road, Ste. 600
17                            Phoenix, AZ 85016

18  ☐     I hereby certify that on March 5, 2018, I served the attached document by mail
          on the following, who are not registered participants of the CM/ECF System:

19

20                                   s/  Meeling Tan

21

22

23

24

25

26

27

28                                    14

5965039v1(67156.1)